THE STATE v. EMPIRE BOTTLING COMPANY, Appellant.

### Division Two, July 14, 1914.

**NONALCOHOLIC DRINKS: Adulteration: Saccharin: Constitutional Question.** The statute (Laws 1911, p. 261) prohibiting the making or selling of nonalcoholic drinks adulterated with saccharin is unconstitutional. Whether saccharin is deleterious to health or not, it is an arbitrary discrimination to prohibit its use in nonalcoholic drinks and not in other foods and drinks. If the Legislature intended to prevent the use of saccharin in nonalcoholic drinks, not because it is deleterious, but because it sweetens, then there is an arbitrary discrim-

ination in favor of those who sweeten such drinks with sugar. If the Legislature regarded saccharin as deleterious to health, it should have excluded it from all foods and drinks, and not merely from nonalcoholic drinks. If the purpose was merely to prevent the sweetening of nonalcoholic drinks, it should have prohibited the use of any kind of sweetening in such drinks.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Calvin N. Miller,* Judge.

REVERSED.

*Schnurmacher & Rassieur* for appellant.

(1) The act is a special law, although a general law might have been made applicable, and it therefore violates subdivision 32 of section 35 of article 4 of the Constitution of Missouri. In so far as the said act prohibits the use of saccharin in non-alcoholic drinks, without at the same time prohibiting the use of saccharin in alcoholic and other drinks and foods, the act is class legislation and violates subdivision 26 of section 53 of article 4 of the Constitution of Missouri, in that it grants a special or exclusive right, privilege or immunity to other corporations, associations or individuals, and unlawfully discriminates against the defendant. And the said act also violates section 1 of the Fourteenth Amendment to the Constitution of the United States, in that it unlawfully abridges the privileges and immunities of this defendant and denies to this defendant the equal protection of the laws. State v. Miksicek, 225 Mo. 572; Woolley v. Mears, 226 Mo. 41; State ex rel. v. Ashbrook, 154 Mo. 375; State v. Walsh, 136 Mo. 405; State v. Thomas, 138 Mo. 100. (2) Even if the act be held constitutional in every respect, yet, in no event can there be a conviction of defendant without proof that saccharin is injurious to health and therefore that the soda water was adulterated.

*John T. Barker,* Attorney-General, and *W. T. Rutherford,* Assistant Attorney-General, for the State.

(1) The act applies to all manufacturers and persons offering for sale soda water containing saccharin, and is, therefore, not open to the objection of being class legislation. State ex inf. v. Oil Co., 218 Mo. 368; State v. Webber, 214 Mo. 277; State v. Grossman, 214 Mo. 240; State v. Railroad, 239 Mo. 233; Railroad v. Arkansas, 219 U. S. 466. (2) It was within the legislative function in the enactment of this statute for the preservation of health to insist that nonalcoholic drinks should not have saccharin as an ingredient. St. Louis v. Schuler, 190 Mo. 531; St. Louis v. Polinsky, 190 Mo. 520. (3) All questions concerning the justice, reasonableness, wisdom or policy of statutes must be left to the Legislature, and therewith the courts are in nowise concerned. 1 Lewis's Sutherland, Stat. Constr., secs. 85, 366; Tel. Co. v. Manning, 186 U. S. 238; Hannibal v. Marion Co., 69 Mo. 571; People v. Railroad, 23 Barb. 138; Railroad v. Little, 45 Ga. 388; Burlington v. Dey, 82 Iowa, 312; Plank Road v. Harrison, 16 Ill. 81; Jamison v. Gas Co., 128 Ind. 555; Ins. Co. v. Commonwealth, 133 Mass. 161; State v. Swaggerty, 203 Mo. 527; Railroad v. United States, 220 U. S. 575; Thornley v. U. S., 113 U. S. 313; U. S. v. Chase, 135 U. S. 262; Plessy v. Ferguson, 163 U. S. 558; Hawaii, Mankichi, 190 U. S. 247; Bank v. Parker, 192 U. S. 80; New Jersey v. Anderson, 203 U. S. 490; Railroad v. Cotton Oil Co., 204 U. S. 447; Railroad v. Arkansas, 219 U. S. 465.

ROY, C.—This is a prosecution under the Act of April 7, 1911 (Laws 1911, page 261), prohibiting the

**Adulteration of Nonalcoholic Drinks: Saccharin: Unconstitutional Statute.** adulteration of non-alcoholic drinks by the use of saccharin and other substances therein named. Defendant was convicted and has appealed. It is

charged in the information that defendant sold "an article of food, ready for consumption, being a non-alcoholic drink, to-wit, soda water, which was then and there filled into a bottle containing about one pint, and which was then and there adulterated in this, to-wit, by having a foreign substance added thereto, to-wit, saccharin."

Defendant moved to quash the indictment because that part of the act prohibiting the use of saccharin is not within the title of the act, and is, therefore, contrary to section 28 of article 4 of our State Constitution, and also because the act is class legislation contrary to subdivision 26 of section 52 of article 4 of that Constitution, and also because it abridges the privileges and immunities of this defendant and denies to this defendant the equal protection of the laws, contrary to section 1 of the Fourteenth Amendment to the Constitution of the United States. The motion was overruled.

At the trial defendant admitted that it sold to one Frank Mantz for fifteen cents a bottle of soda water containing one pint, said soda water being a non-alcoholic drink, an article of food ready for consumption. H. E. Wiedemann, a chemist, witness for the State, testified that he analyzed the soda water furnished him by Mantz and found that the soda water in the bottle contained 0.0229 of one gram of saccharin.

At the close of the State's case, defendant's counsel asked for its discharge on the State's testimony, which motion was overruled. Defendant then proceeded to introduce its evidence, and the following occurred:

"Mr. Rassieur: I desire to introduce a copy of the report of the Remsen Referee Board, which I have with me here, as published by the Government. It was transmitted March 6, 1911, to the Secretary of Agriculture by Ira Remsen, Chairman of the Board. I offer only the report and not all the exhibits that go with

the report; I also offer the supplementary report of January 13, 1912; and also the opinion of Frank McVeagh, Secretary of the Treasury and a member of the Pure Food Board of the United States.

"Mr. Leahy: I object to the offer of these documents in evidence for the reason that they are incompetent, irrelevant and immaterial, because the law of this State absolutely prohibits the use of saccharin in non-alcoholic drinks. I might also object on the ground that these documents are merely opinions of persons, not sworn and not before the court, but I do not want to put defendant to the expense of bringing these witnesses, therefore I do not object to the evidence on that ground.

"The Court: Upon what theory do you offer that evidence, Mr. Rassieur?

"Mr. Rassieur: On the theory that if the court finds that saccharin, when used in quantities such as the witness testified to as used in this case, the court will say that saccharin used in such a quantity is not and cannot be regarded as injurious, and that therefore there was no adulteration, and a statute which undertakes to make that illegal and forbids the use of that which is harmless is unconstitutional.

"The Court: The objection to the evidence offered by the defendant will be sustained.

"To which ruling of the court defendant then and there by counsel duly excepted and still excepts."

Said report contained the following: "The conclusions reached as a result of the investigations are given in detail in the separate reports herewith presented, together with all of the data upon which these conclusions are based. The main general conclusions reached by the referee board are as follows:

"(1). Saccharin in small quantities (0.3 gram per day or less) added to the food is without deleterious or poisonous action and is not injurious to the health

of normal adults, so far as is ascertainable by available methods of study.

"(2). Saccharin in large quantities (over 0.3 gram per day and especially above 1 gram daily) added to the food, if taken for considerable periods of time, especially after months, is liable to induce disturbances of digestion."

And also the following: "As a result Messrs. Hamilton and Hough have submitted briefs; these briefs have been submitted to Dr. H. W. Wiley, Dr. W. G. Bigelow and Dr. Kebler, of the Bureau of Chemistry, Department of Agriculture, and to Solicitor McCabe and Assistant Solicitor W. P. Jones, of that department; and these five gentlemen have submitted statements—all favoring the prohibition of saccharin —and Messrs. Hamilton and Hough have replied. And the full discussion is now before us in the printed record. The three secretaries, at the hearing on November 22d, asked the attorneys to incorporate in their briefs the proposal of a method to admit the use of saccharin in foods under conditions and restrictions that would limit its possible daily consumption within the limits of positive harmlessness indicated by the referee board, to-wit: 0.3 gram per day; and this proposal has been submitted in definite form. And it seems to be plain—or at least most probable—that the limit of one one-hundredth of one per cent of saccharin in foods would bring the use of saccharin within the limits of positive harmlessness indicated by the referee board. But the calculation on which this is based should be further tested before adoption."

According to the proffered evidence one would need to drink about thirteen pints of the defendant's soda water in twenty-four hours before he would get to the danger point in the use of saccharin. If such is the case, the amount of saccharin in defendant's soda water is not deleterious to health, for we cannot

261Mo20

imagine one so addicted to its use as to consume that much. But, independent of the question as to whether such use of saccharin is deleterious, we think that the statute is an arbitrary discrimination against the makers of soda water. It may be taken for granted that saccharin is or may be used in foods and drinks which are non-alcoholic. Whether it is deleterious to health or not, it is certainly an arbitrary distinction to prohibit the use of saccharin in non-alcoholic drinks and not prohibit its use in other foods and drinks. If it is deleterious to health in one case, it would be so in the other. If it was the purpose of the Legislature to prevent the use of saccharin in soda water, not because saccharin is deleterious, but because it sweetens the soda water, then it is an arbitrary discrimination in favor of those who sweeten soda water with sugar. If the Legislature regarded saccharin as deleterious to health, it should have excluded it from all foods and drinks and not merely from non-alcoholic drinks. If the purpose was merely to prevent the sweetening of non-alcoholic drinks, it should have prohibited the use of any kind of sweetening in such drinks.

We regard this as too plain a case for a long citation of authorities. It falls clearly within the principles enunciated in State v. Miksicek, 225 Mo. 561, l. c. 572.

The judgment is reversed and the defendant discharged. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All of the judges concur.